Mitchell SCHARE, Donald Stefannski, Lesia Gajdycz, Jason Manne, Thomas Salzer and Earle Weprin, on behalf of themselves, and all others similarly situated and affected by the New York State University at Stony Brook Regulations (i. e. the mandatory on-campus residency requirement, the mandatory meal plan and the mandatory cooking fee) as hereinafter alleged, Plaintiffs,

v.

STATE UNIVERSITY OF NEW YORK AT STONY BROOK, and John S. Toll, in his capacity as President of the State University of New York at Stony Brook, Defendants.

No. 75 C 649.

United States District Court, E. D. New York.

Sept. 22, 1977.

Behringer, Hurley & Hurley by Denis R. Hurley, Riverhead, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York by A. Seth Greenwald, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

. PLATT, District Judge.

The plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendants have cross-moved for summary judgment.

## FACTS

■ The named plaintiffs are students at the State University of New York at Stony Brook ("SUNY"). They have brought this action on behalf of themselves and all others similarly situated for violation of their civil rights under 42 U.S.C. § 1983.[1] In particular, the plaintiffs challenged three regulations of SUNY which required mandatory dormitory residence for freshmen, mandatory meal plans and a $25.00 per semester cooking fee. The first two regulations of SUNY have since been changed to the satisfaction of the plaintiffs, and so those claims have been withdrawn.

The only remaining challenged regulation is the one requiring that all students in dormitories not participating in a meal plan pay a fee of $25.00 per semester for use of the cooking facilities in the dormitories. With the removal of the mandatory meal plan regulation, all students living in the dormitories now have the option of eating at least five dinners per week in the cafeteria or paying the cooking fee.

### I

The plaintiffs challenge this cooking fee regulation because they argue that everyone living in the dorms has equal access to the dormitory cooking facilities, and thus the students not on meal plans are being discriminated against. The defendants admit that all students can use the cooking facilities, but argue that there is a rational basis for the discrimination in that students on meal plans will use those facilities less than students not on meal plans. The defendants argue that a $25.00 fee *per semester* is not unreasonable in light of the facts.

■ As there is no claim here that the discrimination was based on any suspect classification, the appropriate constitutional test is the traditional "limited scrutiny" standard. *McGowan v. Maryland,* 366 U.S.

420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1970); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Bynes v. Toll,* 512 F.2d 252 (2d Cir. 1975). Under that test the Court must see if the challenged regulation is reasonable and not arbitrary and bears a rational relationship to a legitimate State objective.

In this case the State's objective is to provide students with cooking facilities for the present and to provide students with better facilities in the future. The plaintiffs do not argue that this is not a legitimate state interest, and so we hold that this is a legitimate State objective and turn to the harder question of whether the regulation is rationally related to that objective. *See Prostrollo v. University of South Dakota,* 507 F.2d 775 (8th Cir. 1974), *cert. denied,* 421 U.S. 952, 95 S.Ct. 1687, 44 L.Ed.2d 106 (1975).

### II

The plaintiffs argue that the regulation is not rationally related to the objective because all dormitory students are allowed to use the facilities, but only students not on meal plans must pay for the facilities.

As to that argument, the courts have been reluctant to question administrative regulations of school authorities. The Supreme Court in *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), stated as follows:

"Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. Our courts, however, have not failed to apply the First Amendment's mandate in our educational system where essential to safeguard the fundamental values of freedom of speech and inquiry and of belief. By and large, public education in our Nation is committed to the control of state and local authorities.

---

1. Although the parties have not raised the problem we note that SUNY is not a person under 42 U.S.C. § 1983, *Monell v. Department of Social Services of the City of New York,* 432 F.2d 259, 263 (2d Cir. 1976), *cert. granted,* 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977).

The plaintiffs have also named the President of SUNY but only in his capacity as President. In view of the monetary claim for damages herein, there may be serious jurisdictional problems which, however, we do not have to reach in light of our decision on the merits.

Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems, and which do not directly and sharply implicate basic constitutional values." (Footnote omitted)

There is no argument here that the imposition of a cooking fee infringes on freedom of speech or belief.

Furthermore, in *Bynes v. Toll, supra,* the Second Circuit upheld a regulation that banned children from dormitories for safety reasons. While such a regulation obviously infringed on such fundamental rights as the right to raise children, the Court upheld the regulation as reasonable because possible safety of the children was involved.

In our case the regulation does not seem unrelated to the State's objective. It does not seem unreasonable to assume that students eating at least five meals a week in the cafeteria will use dormitory cooking facilities less than students not on such a meal plan, and, therefore, it does not seem unreasonable to charge the heavy users twenty-five dollars a semester.

The plaintiffs argue that there is no guarantee that students who are on meal plans will not use the cooking facilities as much or more than non-meal plan students. They also argue that any fees for cooking facilities should be assessed on an actual use basis, but they present no workable plan for deciding who does and who does not use the facilities.

■ The defendants' solution does have a reasonable basis in that students on a meal plan are less likely to cook. As the Supreme Court said in *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

"If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. 'The problems of government are practical ones and may justify,

if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393."

We think the problem here is a practical one that justifies the rough accommodation the defendants have reached.

The defendants' motion for summary judgment should be, and the same hereby is, granted.

SO ORDERED.