Irvin L. Bowmaster, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 18, 1982, before Judges ROGERS, MacPHAIL and DOYLE, sitting as a panel of three.

*Garry Wamser,* for petitioner.

*Jean E. Graybill,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, March 15, 1983:

This is a welfare rights case founded upon an allegation of conflict between the Pennsylvania Department of Public Welfare (DPW) regulation at 55 Pa. Code §171.22 and Section 432.12 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 9, 1976, P.L. 993, 62 P.S. §432.12.

Irvin L. Bowmaster, the petitioner, Rose Adams, and Ms. Adams' two children have resided together in a mobile home rented in the petitioner's name since September, 1980. Ms. Adams and her children receive assistance under the Aid to Families with De-

pendent Children program (AFDC). Ms. Adams contributes approximately $80 each month for rent, while the petitioner pays approximately $90 a month for rent. The other household expenses are divided in the following manner: the petitioner is responsible for the heating fuel of $50 a month, Ms. Adams pays for both the electricity bill of $35 a month and the bill for trash removal of $6 a month. Neither the petitioner, nor Ms. Adams has a legal duty to support the other.

On October 31, 1980, the petitioner applied for general assistance benefits for himself. At the time of the application, the petitioner informed the caseworker in an interview that he was living with a woman and her two children and that they were sharing shelter expenses. On his application for benefits, however, the petitioner did not state that Ms. Adams and he shared the rental obligation.

The petitioner was notified on November 10, 1980, that he was eligible for general assistance, but only in the amount of $58 which represented the difference between a four-person allowance of $369 and $311, the amount that Ms. Adams and her children were presently receiving in AFDC benefits. The basis for this determination was that the petitioner was not a separate assistance unit, but rather a part of an assistance unit since he was sharing living arrangements in a "common dwelling" with AFDC recipients within the meaning of 55 Pa. Code §171.22 which provides in pertinent part:

> Assistance unit—Any group of persons who occupy a common dwelling unit and who are applying for or receiving AFDC, including AFDC—CU or GA. There shall be only one assistance unit in a dwelling unit except for the following:

(i) The following persons or family groups shall constitute separate assistance units:

(A) A roomer, or a roomer and boarder and their dependents with whom they are living (applies to AFDC or GA, or both). A roomer or boarder, or both is one who pays a fixed fee to a provider of service for room or board, or both. . . .

If the petitioner either lived separately or was considered a "roomer," he would be treated as a single assistance unit and be eligible for $164 each month.[1]

After a hearing, this action was affirmed by a hearing examiner. Both the director of the Office of Hearings and Appeals and the Secretary of DPW affirmed the hearing examiner's decision. This appeal followed.

The petitioner contends that DPW erred in determining his general assistance eligibility and allowance by applying a single assistance unit approach merely because two recipients share a common dwelling and expenses; and that DPW should make eligibility and need determinations based on how much of Ms. Adams' income and resources were actually available to the petitioner in accordance with Section 432.12 of the Public Welfare Code, 62 P.S. §432.12.[2]

---

[1] The assistance unit allowances which are based on the number of persons in an assistance unit are contained in 55 Pa. Code §175.23(a) and provide for a diminishing marginal rate of increase in the allowance for the assistance unit as the number of persons in the unit increases. The result being that the amount of assistance received by the petitioner if he is considered to be a part of an assistance unit, is much less than if the petitioner was considered to be a separate assistance unit.

[2] Both the standard of need (eligibility) and the amount of an allowance are based on the definition of an assistance unit. 55 Pa. Code §171.21(a)(i) defines the AFDC/GA standard of need as:

The general assistance program is administered by the state and the state statute applies. *See Department of Public Welfare v. Molyneaux,* 498 Pa. 192, 197 n. 4, 445 A.2d 730, 733 n. 4. Section 432.12 of the state's Public Welfare Code, 62 P.S. §432.12 reads in relevant part that:

> In determining need for general assistance, the department shall take into consideration all income, excluding that amount equal to the expenses reasonably attributable to the earning of income up to twenty-five dollars ($25) per month, of all members of the assistance unit who are fourteen years of age or older. In addition to said work related expenses, the first twenty dollars ($20) plus fifty percent of the next sixty dollars ($60) shall be deducted from the gross monthly wages of each employed recipient of general assistance. The general assistance grant shall be computed on the remainder.
>
> . . . .
>
> (c) To be considered in establishing financial eligibility and the amount of the assistance payment, income must be actually available for current use by the applicant or recipient. . . .

(i) An assistance unit applying for or receiving AFDC (including AFDC-CU) or GA meets the standard of need if the total gross monthly income and other available resources of the assistance unit is less than the appropriate AFDC/GA income eligibility limitations as defined in subparagraph (vii).

Subparagraph (vii) provides the AFDC/GA income eligibility limitations based on the number of persons in an assistance unit and the county of residence. 55 Pa. Code §175.23 provides for the computation of allowances based also on the number of persons in an assistance unit and the county of residence. *See also* 55 Pa. Code §141.61(c) (defining income eligibility limitation in terms of an assistance unit).

The petitioner, of course, places emphasis on subparagraph (c).

The petitioner additionally relies on *Bond v. Department of Public Welfare,* 44 Pa. Commonwealth Ct. 535, 403 A.2d 1378 (1979). In *Bond,* the mother, a general assistance recipient, shared a rented house with her daughter and her daughter's children, AFDC recipients. The mother's general assistance grant was reduced based on a determination by DPW that the mother and daughter comprised one assistance unit within the meaning of 55 Pa. Code §171.22. We held that the use of 55 Pa. Code §171.22 so as to automatically reduce general assistance payable to the mother was improper because Section 432.12 of the Public Welfare Code requires that only income actually available may be considered in determining need. The *Bond* holding was largely based on the case of *Gurley v. Wohlgemuth,* 421 F. Supp. 1337 (E.D. Pa. 1976), the holding which was that the application of the predecessor of 55 Pa. Code §171.22, to two sisters and their children who occupied the same dwelling unit, whereby the sisters and their children were treated as a single assistance unit of five persons rather than as two separate assistance units for purposes of determining the amount of their monthly AFDC grant, conflicted with federal regulations similar to Section 432.12 of the Pennsylvania Public Welfare Code, 62 P.S. §432.12.[3]

However, the Supreme Court of Pennsylvania has recently considered the procedure to be followed when a state regulation (in that case 55 Pa. Code §183.61) which presumes income availability comes into con-

---

[3] The state welfare regulations at 55 Pa. Code §171.22(i)(B) have since been changed as a result of the *Gurley* decision and now contain an exception specifically excluding from the definition of an assistance unit two AFDC families living in a common dwelling.

flict with Section 432.12 of the Public Welfare Code. In *Department of Public Welfare v. Molyneaux,* 498 Pa. 192, 445 A.2d 730 (1982), the court declared in dictum that:[4]

> Section 432.12 of the Act, Added 1976, July 9, P.L. 993, No. 202, §5, 62 P.S. §432.12, requires the Department to make that determination of need by considering "income actually available for current use." The departmental regulation applicable to the computation of General Assistance at 55 Pa. Code §183.64 which deals with the amount available from a resident parent's income must be construed in the light of the Pennsylvania statute's requirement of actual availability for General Assistance purposes. Thus, the department's fact-finders must initially determine whether the resident parent's income is in fact available in determining eligibility for General Assistance.[16]
>
> [16] If the General Assistance regulation merely provides a presumption of availability from residence in the same household, a matter we do not now decide, it would have evi-

---

[4] The point at issue in *Molyneaux,* was the propriety of the denial of AFDC assistance to a mother and her two children because the father of the children was living in the household and was employed. The court, in affirming the denial of assistance, held:

> [T]he provisions of the Social Security Act establishing only two classes of dependent children eligible for AFDC assistance, those who are deprived of parental support or care by reason of death, continued absence from the home or physical or mental incapacity of a parent and those who are deprived of parental support or care by reason of the unemployment of one of their parents, thereby excluding those who have an employed parent and a caretaker parent present in the household, are constitutional. In addition, the provisions of 55 Pa. Code Section 183.44

dentiary force as a rational presumption and simply shift the burden of producing evidence of non-availability and persuading the fact-finder of that evidence's credibility, subject to appropriate court review under the test of whether or not the agency's factual predicates are supported by substantial evidence on the whole record.

*Id.* at 203 & n. 16, 445 A.2d at 736 & n. 16.

We find this reasoning applicable to 55 Pa. Code §171.22 and controlling. In this case, the petitioner received a smaller grant, $58 instead of $164, solely on the basis of statements he made to his caseworker regarding his living arrangements and shared expenses.[5] Here, DPW, after determining that the facts were not such as would require the application of the room and board exception to 55 Pa. Code §171.22, held that the general rule of 55 Pa. Code §171.22 applied and presumed that Ms. Adams' resources were available to the petitioner without determining whether in fact the resources were actually available.

We therefore reverse the order below and remand the record to DPW for a determination of the petitioner's need and assistance entitlement based upon

---

establishing procedures for the calculation of AFDC grants are in conformity with the federal act and do not violate the due process requirements of the Fourteenth Amendment of the United States Constitution.

498 Pa. at 202, 445 A.2d at 735-36.

[5] 55 Pa. Code §175.24(b)(2)(ii) provides for the manner in which the family allowance for the assistance unit will be shared:

(ii) Subject to the limitations set forth in this paragraph, the largest possible share will be distributed to the AFDC grant group, and the smallest share to the GA grant group. If there is more than one AFDC grant group the allowances may be divided equally or unequally among the AFDC grant groups, as circumstances may indicate or require.

a determination of actual resources shared between the two assistance recipients. However, as *Molyneaux* teaches, 55 Pa. Code §171.22 does provide a rational "presumption of availability from residence in the same household" and the burden will be upon the petitioner to prove the non-availability of Ms. Adams' resources.

Reversed; remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

ORDER

AND Now, this 15th day of March, 1983, the order appealed from is reversed, and the case is remanded for further proceedings consistent with the above-captioned opinion. Jurisdiction is relinquished.